FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 25 2012

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
_____ DIVISION

CASE NO. ▓▓▓▓  4:12 CV00052 Jmm

1.    Parties

In item A below, place your full name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A.    Name of plaintiff: **Olasuwon L. Hicks**
ADC # 122781

Address: **P.O. Box 180 Brickeys Ar. 72320**

Name of plaintiff: _____
ADC # _____

Address: _____

This case assigned to District Judge _Moody_
Name of plaintiff: _____ and to Magistrate Judge _Deere_
ADC # _____

Address: _____

In item B below, place the full name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.

B.    Name of defendant: **Sherwood Police Department**

Position: **Officers**

Place of employment: **City of Sherwood Police Department**

Address: **2201 East Kiehl Ave. Sherwood Ar. 72120**

Name of defendant: **Arkansas State Police**

Position: **State Troopers**

Place of employment: **Arkansas State Police Headquarter**

Address: #1 STATE POLICE PLAZA LR. AR. 72209 _____

Name of defendant: _____

Position:_____

Place of employment: _____

Address: _____

Name of defendant: _____

Position: _____

Place of employment: _____

Address: _____

II.    Are you suing the defendants in:

☐    official capacity only
☐    personal capacity only
☑    both official and personal capacity

III.   Previous lawsuits

A    Have you begun other lawsuits in state or federal court dealing with the same   facts involved in this action?

Yes ___    No ☑

B.    If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

☐    Parties to the previous lawsuit:

Plaintiffs: _____

_____

Defendants: _____

_____

☐    Court (if federal court, name the district; if state court, name the county):

☐    Docket Number: _____

☐    Name of judge to whom case was assigned: _____

☐    Disposition: (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____

☐    Approximate date of filing lawsuit: _____

☐    Approximate date of disposition: _____

IV.    Place of present confinement: **EAST ARKANSAS REGIONAL UNIT** _____

_____

V.    At the time of the alleged incident(s), were you:
(check appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges

__✗__ serving a sentence as a result of a judgment of conviction

_____ in jail for other reasons (e.g., alleged probation violation, etc.)
explain: _____

_____

VI.    The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion of administrative remedies of all claims asserted, prior to the filing of a lawsuit. There is a prisoner grievance procedure in the Arkansas Department of Correction, and in several county jails. Failure to complete the exhaustion process provided as to each of the claims asserted in this complaint may result in the dismissal without prejudice of all the claims raised in this complaint.

A.    Did you file a grievance or grievances presenting the facts set forth in this complaint?

Yes ____    No ✗

B.    Did you completely exhaust the grievance(s) by appealing to all levels within the grievance procedure?

Yes ____    No ✗

If not, why? THIS IS NOT A "FACILITATED MATTER"

VII.    Statement of claim

State here (as briefly as possible) the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

FAIL TO YEILD FROM LAW ENFORCEMENTS (SHERWOOD POLICE) OFFICERS DISABLE VEHICLE. BOXED ME IN. DISCHARGED 29 PROJECTILES WHILE HANDS WAS IN THE AIR. I WAS PULLED THROUGH DRIVER WINDOW "SHOT MULTIPLE" TIMES BY SHERWOOD POLICE OFFICERS / STATE POLICE "THESE ARE THE NAMES IN MY MOTION" WHICH THERE SHOULD HAVE BEEN MORE "LIKE THE SHOOTING OFFICERS. SHERWOOD POLICE "LIEUTENANT JEFF HAGAR, ETC.? STATE POLICE "DUSTIN CHASTAIN, DONALD JOHNSON, STUART WOODWARD. S/A JEFF WHITLOCK, S/A JOSEPH PICKETT, S/A DAVID MOSS S/A DEXTER HOLMES "ALL INVESTIGATORS" THERE WERE "TEN POLICE UNITS" NONE OF THE OFFICERS NAMES STATED IN MOTION. VIDEO FOOTAGE WILL TELL HOW EACH DEFENDANT IS INVOLVED"

VIII.   Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite
no cases or statutes.

SUMMONS / SUBPOENA

██████ VIDEO FROM CASE FILE, PLUS OFFICERS WHO DISCHARGED WEAPONS

TO SHOW "EXCESSIVE FORCE" WAS USED

"CASE NO. ████ 60 CR 11-34"

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed on this 17TH day of MAY , 20 11 .

_____
_____
_____
Signature(s) of plaintiff(s)

 

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### 1st _____ DIVISION

**STATE OF ARKANSAS**                                                    **PLAINTIFF**

**VS**                              CR 11-34

**OLAJUWON L HICKS**                                                     **DEFENDANT**

*Trp DUSTIN CHASTAIN*

### FELONY INFORMATION
### COUNT 1

FILED 01/06/11 10:40:44
Larry Crane Pulaski Circuit Clerk
DRS

Larry Jegley, Prosecuting Attorney of the Sixth Judicial District of Arkansas, in the name, by the authority, and on behalf of the State of Arkansas, charges OLAJUWON L HICKS with the crime of violating ACA § 5-13-204 AGGRAVATED ASSAULT committed as follows, to wit: The said defendant(s), in Pulaski County, on or about August 16, 2010,  unlawfully, feloniously, under circumstances manifesting extreme indifference to the value of human life, did purposely engage in conduct that created a substantial danger of death or serious physical injury to TRP THOMAS LOPEZ, (against the peace and dignity of the State of Arkansas.

### FELONY INFORMATION
### COUNT 2

Larry Jegley, Prosecuting Attorney of the Sixth Judicial District of Arkansas, in the name, by the authority, and on behalf of the State of Arkansas, charges OLAJUWON L HICKS with the crime of violating ACA § 5-13-204 AGGRAVATED ASSAULT committed as follows, to wit: The said defendant(s), in Pulaski County, on or about August 16, 2010,  unlawfully, feloniously, under circumstances manifesting extreme indifference to the value of human life, did purposely engage in conduct that created a substantial danger of death or serious physical injury to OFC JOSEPH EDWARDS, against the peace and dignity of the State of Arkansas.

*4 or 5 YEAR SENTENCE WITH/O JAIL CREDIT*

 

Date Scanned 1/13/11

### FELONY INFORMATION
### COUNT 3

    Larry Jegley, Prosecuting Attorney of the Sixth Judicial District of Arkansas, in the name, by the authority, and on behalf of the State of Arkansas, charges OLAJUWON L HICKS with the crime of violating ACA § 5-54-125 FLEEING committed as follows, to wit: The said defendant(s), in Pulaski County, on or about August 16, 2010,  unlawfully, feloniously, knowing that his arrest or detention was being attempted by a duly authorized law enforcement officer, did flee by means of a vehicle under circumstances manifesting extreme indifference to the value of human life, purposely operated said vehicle in such a manner that created a substantial danger of death or serious physical injury to another person or persons, against the peace and dignity of the State of Arkansas.

Larry Jegley
Prosecuting Attorney

By: _____
Deputy Prosecuting Attorney

 

Date Scanned 1/13/11

Prosecutor Number:  4423

INFORMATION OF DEFENDANTS

Olajuwon L Hicks                    3/14/1983

6006 Leabrook Dr
Sherwood, AR  72120

| | | |
|---|---|---|
| Custody Status | : | Not in Custody |
| Bond Recommended | : | |
| Bond Amount | : | 5000 |
| Bond Type | : | Surety Bond |
| SID # | : | 3128310 |
| Arrest Date | : | 12/20/2010 |
| Arrest Tracking # | : | 2638110 |
| Race | : | B |
| Gender | : | Male |

**ARKANSAS ARREST / DISPOSITION REPORT**
Pulaski County Sheriff's Office

Date Scanned 1/13/11

DEFENDANT IDENTIFICATION

Arresting Agency Name: PCSO

NCIC CODE: AA0600000

| Name Last | First | Middle |
|---|---|---|
| Hicks | Olajuwon | |

Aliases

STREET ADDRESS: 6006 Leabrook
PHONE NUMBER: 831-8533

City: Sherwood
State: AR
Zip: 72120

SOCIAL SECURITY NO. ____-9642

DRIVERS LICENSE: 906260015

Employer / Occupation:

Sex: ☒ M ☐ F

RACE: ☐ WHITE ☒ BLACK ☐ American Indian or Alaskan Native ☐ Asian or Pacific Islander ☐ Unknown

Ethnicity: ☐ Hispanic ☒ Not Hispanic

Date of birth: Mo 3 Day 14 Year 83

Place of Birth: Arkansas

| Hair | Eyes | Weight | Height | Scars and Marks |
|---|---|---|---|---|
| Blk | Bro | 195 | 6'3 | |

Name Nearest Relative

Phone Number

Place of Arrest: 3400 S Woodrow

Arresting Officers: Faircloth 2399

Date of Arrest: 12/20/10

Time of Arrest: 1300

Report Number:

Agency Received From:

Agency Transferred to:

| Case / Docket Number | Statute No. | Counts | Charge Description | Law Enforcement Action | Date of Action |
|---|---|---|---|---|---|
| 1 | | 2 | Affidavit Ag Asslt | F. Arrest | 12/13/10 |
| 2 | | | Flee | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

Facts of Arrest (PC): Mr. Hicks turned himself into the Sheriffs Dep. He was ~~booked with~~ taken to South Intake without incident.

| Complainant and Witness Names | Address | Phone | Right Thumb Print |
|---|---|---|---|
| Complainant | | | Renny's Bailbonds |
| Witness | | | |
| Witness | | | |

Court Trying Case: PCDC

Court Date: 1-11-11  Time: 9A

**Citation to Appear**
I promise to appear at the above stated time, place and court.

**IMPORTANT NOTICE**

**Failure to appear at the stated time, place and court may result in your arrest and shall constitute a separate offense for which you may be prosecuted.**

Name and Title of Issuing Officer
(Signature of Accused)

TR# 9638110

TRAVELING COPY

Date Scanned 1/13/11

STATE OF ARKANSAS
COUNTY OF *Pulaski*

CITY OF *Little Rock*

**RENNY'S BAIL BOND COMPANY, INC.**
408 West 31st Street
Little Rock, AR 72206
(501) 374-0484

CASE NUMBER: _____

## BAIL BOND

AH-*058*- **0148**

*Olajuwon Hicks*

Item 5 - Defendant , hereinafter referred to as the Defendant, being in custody, charged with the offense(s) of

*7TA, Ag Assault 2cts, Flee*

and having been admitted to bail in the amount of $ *5000.00*

Now **RENNY'S BAIL BOND COMPANY, INC.**, does hereby undertake that the Defendant will appear before the Court designated below at the time indicated, and further guarantees all subsequent appearances before any court having jurisdiction, until the Defendant is lawfully discharged or upon rendition of final judgment has surrendered himself in execution thereof. If the Defendant fails to perform any of these conditions, we will pay and forfeit to the *Pulaski* (District or County to be inserted) Court of *Pulaski County D.* the sum of *5000*

IN WITNESS WHEREOF, I have hereunto set my hand and seal this *Dec* day of *20* 20 *10*

Approved:

Defendant to appear in: *Pulaski County Dist.*

District Court, City of *Pulaski County*

Circuit Court, County of _____

At *8:45* ☑A.M./P.M. on *Dec 22*, 20 *10*

_____ County Circuit Court

_____ County Chancery Court

on NOTICE TERM *Call in Every Friday*

Defendant: *Hicks, Olajuwon*

Address: *6006 Leabrook*

City, State, Zip: *Sherwood Ar 72126*

Phone: *501-834-8533*

Surety: **RENNY'S BAIL BOND COMPANY, INC.**

_____
Attorney - in - Fact

### Power of Attorney

| Authority for: Item 1 | Item 2 Not valid for Bond in excess of Must be preprinted | Item 3 Not valid if used after Must be preprinted | Item 4 Date issued | Power Number |
|---|---|---|---|---|
| *Kevin Lewis* To at as Attorney - in - Fact - State of Arkansas | **$5,000.00** | 12/31/2050 | *12-20-10* | AH-*058*- **0148** |

| DEFENDANT: *Olajuwon Hicks* | | Insert Bond Amount Void if not completed |
|---|---|---|
| SOCIAL SECURITY # *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* | DATE OF BIRTH *3-14-83* | *5000.00* |

SECTION 1. **RENNY'S BAIL BOND COMPANY, INC.** A corporation does hereby make, constitute and appoint the party as set forth in item one (1) above as its true and lawful Attorney-in-Fact with full power and authority hereby confirmed to execute on behalf of the said company, as sole Surety only subject to the limitations as herein set forth, Bail Bonds in Judicial Proceedings, whether criminal or civil any State Court, County Court or District Court and in all U. S. Federal Court on behalf of the above named defendant.

SECTION 2. That the authority of such Attorney-in-Fact to bind the company shall not in any extent exceed the amount set forth in Item Two (2) above on any one bond and the said Attorney-in-Fact is hereby authorized to insert in Item Five (5) the name of the person on whose behalf this bond is given.

SECTION 3. This power is not valid unless used on or before the date set forth in Item Three (3) above and can only be used once.

SECTION 4. The authority of such Attorney-in-Fact is limited to appearance bonds and can not be construed to guarantee failure to provide payments, back alimony payments, child support payments, fines, or wage claims.

SECTION 5. **RENNY'S BAIL BOND COMPANY, INC.** Does make, constitute and appoint the above named agent its true and lawful Attorney-in-Fact for it and in its name, place stead, to execute, seal and deliver for and on its behalf and as its act and deed, as Surety, a bail bond only. Authority of such Attorney-in-Fact is limited to appearance bonds and can not be construed to guarantee failure to provide payments, fines or wage law claims on behalf of named defendant.

SECTION 6. IN WITNESS WHEREOF, **RENNY'S BAIL BOND COMPANY, INC.** Has caused these presents to be signed by its Proprietor and its corporate seal to be hereunto affixed (if applicable) on the date set forth in Item Four (4) above.

SECTION 7. DO NOT ACCEPT A POWER OF ATTORNEY WHICH BEARS ANY ALTERATIONS, ERASURE OR INTERLINEATION.

(President/Corp. Officer)

Date Scanned 1/13/11



# ARKANSAS STATE POLICE

ASP-1
(Rev. 08/05)

## Report of Investigation Form

Case Number: CID-A-04104-10     Priority Level: 1     Reporting Level: 1

Date Opened: 08/16/2010     Date Closed: _____
(Month/Day/Year)                    (Month/Day/Year)

Crime(s)/Statute Number(s): Aggravated Assault- 5-13-204 / Fleeing- 5-54-125

Incident Time: 12:27   ☒ AM ☐ PM   Date: 08/16/2010
(Month/Day/Year)

Location: Interstate 30 E. Bound/ Overpass near the Broadway Exit     County: Pulaski

Requesting Agency: _____     Phone #: _____

Victim: Dustin Chastain     Race: w   Sex: m   DOB: _____
(First/MI/Last Name)                                                (Month/Day/Year)

Address: #1 State Polcie Plaza   Little Rock   AR   72209   Phone #: 501-618-8000
Street                              City              State   Zip Code

Suspect: Olajuwon Hicks     Race: B   Sex: M   DOB: 03-14-1983
(First/MI/Last Name)                                                (Month/Day/Year)

Address: 6006 Leabrook Drive   Sherwood   AR   72120   Phone #: 501-834-8533
Street                              City              State   Zip Code

Number Arrested: _____   **Habitual Offender** ☐ Yes **Act 1262** ☐ Yes **Juvenile Suspect** ☐ Yes

### PROPERTY VALUE INFORMATION

|  Stolen  |  Recovered  |  Contraband  |
|---|---|---|
| $ _____ | $ _____ | $ _____ |

### DRUGS PURCHASED OR CONFISCATED

Type: _____   Weight: _____   Value: $ _____   ASP Money Spent: $ _____

Type: _____   Weight: _____   Value: $ _____   ASP Money Spent: $ _____

Type: _____   Weight: _____   Value: $ _____   ASP Money Spent: $ _____

Case Agent: S/A DEXTER HOLMES #261     Supervisor: SGT. STUART WOODWARD #179 SW
(Rank/First/MI/Last Name/Badge#)                    (Rank/First/MI/Last Name/Badge#)

| File Review Date | Initials | Copies To | Date | Person Approving |
|---|---|---|---|---|
| 09-22-10 | BER | _____ | _____ | _____ |
| | | _____ | _____ | _____ |
| | | _____ | _____ | _____ |

### CASE STATUS

Final Investigative Actions

_____ All Investigative Actions Terminated     _____ Evidence Room Cleared

_____ No Judicial Actions Taken By Prosecutor     _____ Pending Adjudication

Remarks: _____

Judicial Disposition: _____

**If Additional Spaces Are Needed Use Another Sheet**



# ARKANSAS STATE POLICE

ASP-3
(Rev. 09/00)

## Criminal Investigation Division
## Case Form

Date:          AUGUST 16, 2010
Dictated by:   S/A DEXTER HOLMES #261
Date Type:     SEPTEMBER 15, 2010  **Proofed MD**
Copies to:     S/A DEXTER HOLMES

### SUMMARY OF INVESTIGATION

On August 16, 2010, at approximately 1:15 a.m. I was notified by Troop A Communication of an Officer involved shooting, and was told to contact SERGEANT DONALD JOHNSON, supervisor on scene. When I contacted JOHNSON he told me that there was a pursuit and the suspect had been shot, and taken to UAMS. He requested that I respond to I-30 westbound and Broadway Exit. I called SERGEANT STUART WOODWARD and informed him of the situation, we both responded.

I arrived at the scene at approximately 2:00 a.m. When I arrived the scene was taped off and traffic was being directed down the Broadway Exit. I observed the suspect's vehicle surrounded by police units. The suspect vehicle had bullet holes and the glass broken out. There was a piece of clothing saturated in blood on the ground near the driver's door of the suspect's car. WOODWARD got preliminary information of the incident from TROOPER DUSTIN CHASTAIN. WOODWARD then began locating and preserving all evidence. I photographed, marked and packaged all evidence. The scene was released and the Interstate reopened at approximately 4:36 a.m.  The suspect's vehicle was towed by Phillips Brother Towing to the Arkansas State Police Headquarter and stored in the evidence storage bay, were it was secured. I followed the wrecker to the Arkansas State Police storage bay.  On the same day S/A DAVID MOSS, S/A JOSEPH PICKETT, and I went to the evidence storage bay and searched, photographed the suspect's vehicle. We found several projectiles in the passenger seat. There were two bullet holes in the left rear door, three in the windshield, two in the front right fender and two in the front right head lamp. The projectiles found in the suspect's vehicle were collected, photographed and submitted to the Arkansas State Crime Lab.  All photographs taken are a part of this case.  On August 17, 2010, the suspect's vehicle was released to Phillips Brother Towing.

On the same date S/A JEFF WHITLOCK traveled to Sherwood Police Department and took possession of the firearms used in the shooting, from LIEUTENANT JEFF HAGAR, of the Sherwood Police Department. After properly packaging the guns, WHITLOCK and PICKETT transported the guns to the Arkansas State Crime Lab.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/FLEEING

Date Scanned 1/13/11

ASP 3
SUMMARY OF INVESTIGATION
PAGE 2 of 4

On August 18, 2010, WHITLOCK and PICKETT traveled to the Arkansas State Crime Lab and took possession of the Sherwood Police Officer's guns and transported them to the Sherwood Police Department. They returned the guns to HAGAR. WHITLOCK and PICKETT, while at the Sherwood Police Department conducted interviews of the Sherwood Police Officers involved in the pursuit and the shooting. All the officer's statements were consistent with the exception of when and where they got involved in the pursuit involving OLAJUWON HICKS. Some officers were able to observe things that other officers were not, due to their location in the pursuit. All involved officers provided recorded and written statements that are a part of this case file.

On August 19, 2010, I traveled to 1924 West Main Street, Jacksonville, Arkansas, to interview EARLENE GRIFFIN, the ex-girlfriend of HICKS. She told me that she allowed HICKS and his mother to use her car to go get school supplies for their son. She said after he finished using the car he was to bring the car back to her. She said when he finished using the car he called her; but she was on her way to Bryant with her sister (LASHUNDIA GRIFFIN). She said that he was upset because he wanted her to come back to Jacksonville and she refused. She said that when they had arrived in Bryant, her sister received a phone call from her alarm company. They told her that her alarm was going off at her residence showing back door entrance. GRIFFIN stated that her sister thought that HICKS set the alarm off, to make them have to come back to Jacksonville. She stated that her sister called HICKS, they exchanged words. She said when she was about to leave Bryant she called HICKS. She said she could tell by his voice he was still upset. He would always change locations of where to bring her car to. She said they finally agreed for him to bring it to her sister's house. She said when they got to her sister's house, her sister called the police, because she was still upset about HICKS coming into her house. GRIFFIN stated that as the police were pulling into her sister's yard, HICKS was pulling up with her car. She said when he saw the police he continued driving. The police got behind him and turned on their lights and sirens, but HICKS did not stop. She stated that HICKS called her because he thought she had called the police on him. GRIFFIN stated that he was upset. She said that he drove past the residence twice and the Jacksonville Police pursued him both times. She said the last time; he stopped at the stop, where he could still see the police and the house. She said her sister's friends were outside and when HICKS saw them he thought that they were going to come to where he was. She stated he told her "if anyone came up to this car I am going to shoot them." GRIFFIN stated that her sister heard him say it and she made her tell the police. She stated that after the last pursuit started she called and told HICKS to stop and park the vehicle, but he would not. GRIFFIN said she got her sister to drive her around to see if they could find her car. She said that she later received a call from HICKS. She said when she answered her phone, HICKS was on the other end crying intensely. She said she could hear the police sirens in the background.

FILE NUMBER: CID-A-04104-10                    CRIME: AGGRAVATED ASSAULT/FLEEING

ASP 3
SUMMARY OF INVESTIGATION
PAGE 3 of 4

GRIFFIN stated that she told HICKS to park the car on the side of the road and leave it there. She stated that he told her it was too late. She said while they were on the phone she heard a loud crash and the phone was silent. She said they were behind the pursuit, by the time they made it to the scene the police was directing traffic to the Broadway Exit. GRIFFIN stated as they were driving down the exit she could see her car and HICKS on the ground.

On the same date WHITLOCK and PICKETT interviewed the Arkansas State Police Troopers involved in the pursuit and the shooting at Arkansas State Police Headquarters. All the Troopers statements were consist, with exception of when and where they got involved in the pursuit. Some Troopers were able to see things that others were not, due to their location during the pursuit. The Troopers recorded and written statements are a part of this case file.

On August 20, 2010, at approximately 1:58 p.m. PICKETT and I traveled to UAMS and interviewed GAYNELL MCMILLION, HICKS' mother. She stated that she was on the phone with HICKS at different times during the pursuit. She said that GRIFFIN called her and told her that the police was chasing HICKS, and he would not stop. She said that she called him and asked him what was going on. She stated that he told her the police was behind him, and that he had messed up. She said that she told him to pull over and she would come and get him. MCMILLION said that he told her it was too late. She stated that she told him it was not too late, but he would not pull over. She stated that he hung the phone up. She said a few minutes later she received a call from HICKS; she stated he told her not to call him again, because the police was listening. She said shortly after she received a call from GRIFFIN, telling her the same thing. She said while she was on the phone with GRIFFIN, she told her HICKS just wrecked her car and that the police just shot him. MCMILLION stated that she got in her car and went to the scene.

On August 23, 2010, at approximately 4:15 p.m., I traveled to UAMS, room E-727, and interviewed OLAJUWON HICKS. He stated that his girlfriend let him use her car to go purchase school supplies for their son. He stated that when he finished he called GRIFFIN to ask where she was, so he could bring the car to her. He stated that she told him she was in Little Rock. He stated that he got upset because when he asked her where she was, she acted like she did not want him there. After they got off the phone he said he drove back to Jacksonville, to GRIFFIN'S bother-in-law's house, to get his shoes and other items out of the brother-in-law's car. He stated that he did not go inside the house. He stated that the back door to GRIFFIN'S sister's house does not lock and everyone knows it. HICKS stated once he got his things he drove around North Little Rock and Jacksonville. He stated he received a call from GRIFFIN, she wanted her car. He stated that he would not take her the car right away, because she was not thinking about the car when she was in Bryant or Benton.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/FLEEING

ASP 3
SUMMARY OF INVESTIGATION
PAGE 4 of 4

HICKS stated that he was upset, so he did not take the car to where she wanted him to. He said that they later agreed to meet at her sister's house. HICKS stated that when he made it to the sister's house, he saw Jacksonville Police pull into the driveway. He stated that he drove past the house and saw Jacksonville Police officers get into their units and follow behind him. He said when he looked in his rear view mirror he saw blue lights and heard sirens. He stated that when he got on the Interstate he accelerated. When he looked up the police was not behind him. He stated that he called and asked GRIFFIN why she called the police. HICKS said he was mad, he said he drove back by the house and the police chased him again. He stated that they stopped pursuing him. He said he went back to the house, this time he stated that he stopped at the stop sign down the street. He stated that during this time he was on the phone with GRIFFIN. He said that people were standing outside in the front yard. He stated that when the police saw him they got in their units and pursued him again. HICKS stated that when he got on the interstate and looked behind him he did not see the police. He said that he went to his mom's house and got some gas out of a gas can. He said that when he made it to the stop sign he saw a police unit heading toward him. He said that he turned right and headed toward the interstate. He said when he looked behind him he saw blue lights and police units behind him. He stated that he ran over some spike strips and it took out his front right tire. HICKS stated that he got on the interstate and accelerated. He stated that while he was driving he obeyed all traffic laws and he was wearing his seat belt. He stated that when he got in front of the Pentecostal Church on Interstate 40 he ran over another set of spike strips. He stated that is what took out the other three tires. He said his speed dropped to approximately fifteen miles per hour. HICKS stated that is when the police units started trying to squeeze into him to make him stop. He stated the first time they tried he accelerated and drove through it. He said the second time they were able to stop him. HICKS stated that Sherwood Police Officers got out of their vehicles shooting. I asked HICKS did he put the car in reverse. He stated that when he stopped, he put the car in park and put his hands in the air. He stated the next thing he remembers is a Trooper telling the other officers he had his seat belt on.

On August 26, 2010, I received a call from MCMILLION. She informed me that HICKS was discharged from the hospital and would be staying with his father, in North Little Rock. I called and checked on HICKS condition daily.

On September 9, 2010 I prepared a Subpoena requesting HICKS medical records. On the same date I delivered the Subpoena to DEPUTY PROSECUTING ATTORNEY JENNIFER WAYMACK. On September 15, 2010, I called the Arkansas State Crime Lab and was advised by DEBORAH PLANT the evidence was not ready, and the results were still pending. When the results are received a copy will be made a part of this case file.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/FLEEING

Date Scanned 1/13/11

ASP-3
(Rev. 09/00)

# ARKANSAS STATE POLICE

## Criminal Investigation Division
## Case Form

Date:          AUGUST 16, 2010
Dictated by:   S/A DEXTER HOLMES #261
Date Type:     SEPTEMBER 1, 2010  **Proofed MD**
Copies to:     S/A DEXTER HOLMES

### CRIME SCENE SEARCH

The crime scene search was conducted on August 16, 2010, at approximately 2:00 a.m. Officers conducting the crime scene search was:

Special Agent DEXTER HOLMES – Arkansas State Police
Sergeant STUART WOODWARD – Arkansas State Police

The search was conducted at Interstate 30 West near the Broadway Exit, in N. Little Rock, Arkansas.

Interstate 30 West is described as a paved three lane overpass, with two shoulders and a concrete barrier, separating the Eastbound traffic from the Westbound traffic. There are street lights located on the Interstate.

When I arrived at the crime scene, the area was taped off. Police units surrounded the suspect's vehicle. There were seven marked units in front and three units behind the suspect's vehicle, listed as V-1 (4) in the crime scene diagram. The rear of the suspect's vehicle was against the front left of a marked Sherwood Police unit. There were projectiles and spent shell casing on the the ground. There was a bloody piece of clothing lying on the ground next to the suspect's vehicle. There was blood inside the suspect's vehicle. The windows in the suspect's vehicle were busted out. There were bullet holes located in the front windshield, front right fender, left side, and left rear door. Arkansas State Police unit A-25 had damage to the driver side and A-10 had damage to the passenger side. Both ASP units were located in front of the suspect's vehicle. Sherwood Police Department unit 87, located at the right rear of the suspect's vehicle, had damage to the front left.

DAMAGE CAME FROM POLICE BOXEN ME IN

The following items were taken into evidence during the search of the crime scene, I acted as evidence custodian. There were no measurements taken of the evidence before it was collected. I photographed the crime scene, evidence items and recorded the items as they were collected and packaged.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/ FLEEING

ASP 3
CRIME SCENE SEARCH
PAGE 2 of 4

DH-E1  A metal projectile, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelop. This item was marked as DH-E1 and I transported it to the Arkansas State Crime Lab.

DH-E2  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E2 and I transported it to the Arkansas State Crime Lab.

DH-E3  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E3 and I transported it to the Arkansas State Crime Lab.

DH-E4  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E4 and I transported it to the Arkansas State Crime Lab.

DH-E5  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD, I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E5 and I transported it to the Arkansas State Crime Lab.

DH-E6  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E6 and I transported it to the Arkansas State Crime Lab.

DH-E7  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E7 and I transported it to the Arkansas State Crime Lab.

DH-E8  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E8 and I transported it to the Arkansas State Crime Lab.

DH-E9  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E9 and I transported it to the Arkansas State Crime Lab.

DH-E10  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelop. This item was marked as DH-E10 and I transported it to the Arkansas State Crime Lab.

DH-E11  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODAWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E11 and I transported it to the Arkansas State Crime Lab.

FILE NUMBER: CID-A-40104-10          CRIME: AGGRAVATED ASSAULT/ FLEEING
ASP 3

Date Scanned 1/13/11

CRIME SCENE SEARCH
PAGE 3 of 4

DH-E12  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E12 and I transported it to the Arkansas State Crime Lab.

DH-E13  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E13 and I transported it to the Arkansas State Crime Lab.

DH-E14  A spent 223 cal. rifle shell casing, this items was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E14 and I transported it to the Arkansas State Crime Lab

DH-E15  A spent 223 cal. rifle shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E15 and I transported it to the Arkansas State Crime Lab.

DH-E1A  A spent 223 cal shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E1A and I transported it to the Arkansas State Crime Lab.

DH-E2A  A metal jacket from a fired round, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E2A and I transported it to the Arkansas State Crime lab.

DH-E3A  A metal projectile, this was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E3A and I transported it to the Arkansas State Crime Lab.

DH-E4A  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E4A and I transported it to the Arkansas State Crime Lab.

DH-E5A  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E5A and I transported it to the Arkansas State Crime Lab.

DH-E6A  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E6A and I transported it to the Arkansas State Crime Lab.

DH-E7A  A 12 gauge shotgun hull, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E7A and I transported it to the Arkansas State Crime lab.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/ FLEEING

ASP 3

Date Scanned 1/13/11

CRIME SCENE SEARCH
PAGE 4 of 4

DH-E8A  A 12 gauge shotgun hull, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-E8A and I transported it to the Arkansas State Crime Lab.

DH-E9A   A piece of clothing covered in blood, this item was located an marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-9A and I transported it to the Arkansas State Crime Lab.

DH-E10A  A spent 40 cal. shell casing, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-10A and I transported it to the Arkansas State Crime Lab.

DH-E11A  A 12 gauge shotgun buckshot hull, this item was located and marked by SGT. WOODARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-11A and I transported it to the Arkansas State Crime Lab.

DH-E12A  A metal projectile, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-12A and I transported it to the Arkansas State Crime Lab.

DH-E13A  A metal projectile, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-13A and I transported it to the Arkansas State Crime Lab.

DH-E14A  A metal projectile, this item was located and marked by SGT. WOODWARD. I packaged and maintained custody of the item in a small paper envelope. This item was marked as DH-14A and I transported it to the Arkansas State Crime Lab.

FILE NUMBER: CID-A-04104-10          CRIME: AGGRAVATED ASSAULT/ FLEEING

+ WHY HAVE YOU NOT INVESTIGATED THAT THE FACT OF ~~24~~ 29 ~~26~~ PROJECTILES WERE SPENT?

- WHY HAVE YOU NOT INVESTIGATED THE SHERWOOD POLICE & SOME OF THE ASP?

+ [HOW DID EX-GIRLFRIEND SISTER HEAR HIM SAY HE HAD A GUN?
NEED BOTH FEMALES STATEMENTS (BET THEY CAN'T SAY THE SAME THING IF INTERVIEWED SEPARATELY)...
IF I SEE THE ACT THREE DOCTOR BEFORE I TALK TO THE PUBLIC DEFENDER, "DON'T TALK"
                                                        +
+ (WHAT! MADE POLICE OFFICERS OPEN FIRE SHOOTING (SO MANY TIMES AT, HITTING AN UNARMED MAN?)

+ OUT OF ALL EVIDENCE COLLECTED, ONLY POLICE BULLETS WERE COLLECTED! NOTHING INDICATING SUSPECT AS A THREAT WHATSOEVER, JUST BLOOD! NO WEAPONS!

+ IF EACH OFFICER STATEMENT WAS CONSISTENT W/ ONE ANOTHER WHERE ARE THEY? WHY ARE THEY NOT IN MOTION FOR DISCOVERY?

+ WERE IS JACKSONVILLE POLICE REPORTS +

PRELIMINARY PROCEEDINGS

RULE 16: DISCOVERY & INSPECTION.
    (3) CERTAIN DOCUMENTS & OBJECTS
    (4) CERTAIN EXAMINATION & TEST REPORTS
    (5) CONTENT & BASES OF EXPERT TESTIMONY UPON WHICH
        THE GOVERNMENT INTENDS TO RELY

RULE 26.2  " JENCKS ACT
    (2) VERBATIM RECORDINGS OR TRANSCRIPTIONS OF ORAL STATEMENTS

[392]  SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS
    (4)
        SPEEDY TRAIL

["THE DOCTOR MADE FUN OF ME"]

← ON BACK →

HOW CAN I PRESS CHARGES ON THE OFFICERS WHO SHOT ME?
NAMES & ID BADGE NO.

+ WHO IS "THOMAS LOPEZ" & "JOSEPH EDWARDS"
  + HOW WAS THEY IN DANGER?

WHO IS "DUSTIN CHASTAIN"     ( WHERE IS THE PHONE ? )
  HOW WAS HE THE VICTIM?

NEED PHOTO'S OF CAR ... (AND VIDEO OF ENTIRE CHASE UP TIL APPREHENSION)

                              TWO IN RIGHT HEAD LAMP
                              TWO IN RIGHT FENDER
PROJECTILES
  IN PASS. SEAT          + WHY IS INCIDENT INVOLVING OFFICERS SHOOTING SO VAGUE?
PROJECTILES              NOTHING STATING HICKS ACTIONS THAT CAUSE OFFICERS TO SHOOT?
FOUND IN CAR     TWO IN LEFT
                 REAR DOOR

- WHO'S FIRE ARMS WAS TAKEN INTO POSSESSION FROM SHERWOOD POLICE OFFICE
+ WHAT ARE THE STATEMENTS OF THE SHERWOOD POLICE OFFICERS

                                    (AND FORENSICS REPORT)

WHO SHOT THE ~~29~~ PROJECTILES?

WERE IS THE MEDICAL RECORDS? (OF SUSPECT SHOT)

WHY DID OFFICERS OPEN FIRE?
  WAS ANY WEAPON FOUND ON HICKS? WAS PHONE FOUND ON HICKS?
  ( NEED STATEMENTS OF EVERY INVOLVED OFFICER ... )

+ IF ALL PHOTOGRAPHS TAKEN ARE A PART OF THIS CASE, WHY ARE THEY NOT INCLUDED IN MY
- COPY OF MY MOTION FOR DISCOVERY ? (CASE FORM COPY)

+ WHY WERE STATEMENTS TAKEN 2 DAYS LATER, AFTER INCIDENT, INSTEAD OF IMMEDIATELY
   AFTER SHOOTING OCCURED?

  + WHY ARE THESE STATEMENTS NOT INCLUDED IN MOTION FOR DISCOVERY IF THEY'RE
  INDEED A PART OF THIS CASE?

    EX-GIRLFRIEND SAYS 1ST THEY "THOUGHT" HICKS SET ALARM OFF.
  LATER THE REPORTER TRIES TO INCRIMINATE HICKS BY SAYING EX-GIRLFRIEND SISTER
  WAS STILL UPSET ABOUT HICKS "COMING INTO HER HOUSE" (SPECULATION! NOT FACT!)

    NEED SISTERS STATEMENT AND ALARM COMPANYS INFORMATION INVOLVING THE CASE BECAUSE
  ALL PHYSICAL EVIDENCE SPECULATION COULD BE THROWN OUT - IT'S EVIDENT THAT SISTER
  DOESN'T LIKE HICKS - THEREFORE COULD HAVE HIDDEN AGENDA TO SABOTAGE HICKS CREDIBILITY